**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HEMAL GADA, M.D., <br><br> Plaintiff, <br><br> v. <br><br> UPMC and PINNACLE HEALTH CARDIOVASCULAR INSTITUTE, INC. a/k/a UPMC HEART AND VASCULAR INSTITUTE, <br><br> Defendants. | Case No.  2:26-cv-524 <br><br> Hon. Joy Flowers Conti <br><br> *Filed Electronically* |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Plaintiff Hemal Gada, M.D., was dismissed for cause in August 2025 based on deficient clinical performance and a pattern of bullying, hostility, and mistreatment of coworkers.  Notably, his current lawsuit does not assert a claim for breach of his employment contract—a tacit concession that his actual employer, Defendant Pinnacle Health Cardiovascular Institute, Inc. ("PHCVI"), had cause to dismiss him.  He instead predicates his claims on two legally flawed and factually contradictory theories of retaliation.  Both should be summarily dismissed at the outset.

Gada's claim for retaliation under the Pennsylvania Whistleblower Law ("PWL") fails on three separate—and independently fatal—grounds.  In this claim, Gada posits that PHCVI and its parent, Defendant UPMC, fired him in retaliation for alleged concerns he raised *seven months* earlier about the UPMC CEO's corporate board service and air travel.  These allegations do not state the basics of a PWL claim.  To start, Gada fails to allege facts showing that Defendants are an "employer" or "public body" as required under the PWL.  Nor can he.  Indeed, Judge Horan recently dismissed a PWL retaliation claim against Defendant UPMC for this precise reason.

Next, Gada's conclusory allegations of Defendants' "wrongdoing" or "waste" do not (and cannot) amount to a legally cognizable PWL report. Strikingly, the legal "authority" he cites as the basis for Defendants' supposed "fraud" and "waste"—"Section 255.7 of the Pennsylvania Code"—has absolutely nothing to do with Gada's allegations about corporate board service or air travel. Rather, that Code section appears miscited and, if anything, governs confidentiality of drug- and alcohol-abuse research data—an issue not alleged in any way here. No valid claim is stated by reference to Section 255.7. Lastly, the January 2025 "reports" on which Gada bases his PWL claim are stale, seven months removed from his dismissal. Courts routinely dismiss PWL claims for lack of causation where the temporal gap is much smaller, and as here, there are no additional facts alleged warranting a causal inference.

In his alternative Title VII retaliation theory, Gada claims Defendants retaliated against him in violation of Title VII by dismissing him nearly 11 weeks—2.5 months—after he last raised concerns about text messages exchanged among coworkers that Gada perceived as racist.[1] But Gada alleges *no* facts suggesting any causal link between his claimed concerns about those texts and his dismissal. The controlling Third Circuit law is clear that a plaintiff like Gada fails to state a Title VII retaliation claim when the temporal gap between the purported "protected activity" and the plaintiff's dismissal is as sizable as here (*i.e.*, nearly 11 weeks), and there are no facts showing a "pattern of antagonism" in the interim. Gada not only fails to assert facts showing any such pattern of antagonism, he acknowledges that he learned about the text messages from a PHCVI leader's preexisting complaint and that other leaders were responsive to his concerns, stating they

---

[1] While a plaintiff can plead in the alternative, the manner in which Gada does so here confirms the inherent weakness of the claims he does assert: Under Gada's case themes, either he was dismissed in August 2025 because of his concerns about text messages (per his Title VII claim) or because of his CEO reports (per his PWL claim). Each claim requires but-for causation, so both can't be viable. *See infra* at p.4.

were "coordinating a resolution" after his outreach, *see* Compl. ¶¶ 19–21—the very opposite of antagonistic.  The Title VII claim is woefully deficient as a matter of law.

PHCVI fired Gada for legitimate reasons—deficient clinical performance and mistreatment of colleagues.  His two conflicting retaliation theories are meritless on the face of the pleadings and as a matter of law.  The Court should grant Defendants' motion and dismiss the Complaint with prejudice.

## BACKGROUND

PHCVI hired Gada as a cardiologist in 2015.  Compl. ¶ 13.  In 2017, Pinnacle Health Hospitals (of which PHCVI was a part) merged with UPMC.  *Id*. ¶ 15.  PHCVI suspended Gada's clinical privileges on August 3, 2025 after "identif[ying] alleged clinical performance and conduct concerns of [Gada] that were reported to the Medical Executive Committee."  *Id*. ¶¶ 23–24.  On August 13, 2025, the PHCVI Board voted that Gada's clinical deficiencies and behavioral misconduct justified his "termination with cause."  *See id*. ¶¶ 28, 30–31.  Critically, Gada does *not* contend that PHCVI breached his employment contract by dismissing him without cause—an allegation that, if it had any basis, he certainly would have made.  Instead, Gada filed this lawsuit on March 31, 2026—the same day he received a Notice of Right to Sue from the EEOC, *id*. ¶ 3.c— asserting retaliation claims under two alternative and conflicting theories, each premised on different alleged protected activity and each requiring the fact-finder to conclude that a different set of reports was the but-for cause of Gada's August 2025 termination.

**The PWL allegations** (Compl. ¶¶ 34–54):  In his PWL allegations, Gada contends Defendants fired him in retaliation for two types of reports.  First, in early January 2025, Gada states that he learned UPMC's CEO was serving as an outside director for a public company, Edwards Lifesciences.  Compl. ¶¶ 41, 43.  But that fact was no secret—it had been publicly disclosed on the Edwards website and through Edwards' SEC filings as far back as May 2024.  *See*

3

Edwards Lifesciences Corporation, Form 3 (May 7, 2024), https://perma.cc/L9LK-JYGW; *Submission of Matters to a Vote of Security Holders*, Edwards Lifesciences, https://perma.cc/GY58-8Y75 (May 7, 2026).[2]  Eight months later, in January 2025, Gada first communicated about that already-public information with several people, including UPMC's then-Chief Medical Officer and UPMC's Chief Legal Officer.  Compl. ¶¶ 41–48.  The legal department investigated, found no concerns, and closed the complaint.  *Id*. ¶ 51.  Second, Gada asserts that he learned on January 14, 2025 (via a publicly accessible flight-tracking website, www.jetspy.com) that the CEO allegedly used a UPMC airplane to travel to Edwards Board meetings.  *Id.* ¶ 49.  Gada discussed these matters with Mike Mathier, a PHCVI executive.  *Id.* ¶ 50.

According to Gada, PHCVI fired him in August—a full seven months later—as reprisal for raising his concerns about the CEO having what Gada perceived to be conflicts of interest.  *See id*. ¶¶ 52, 54.  Gada alleges no intervening facts connecting his January 2025 reports to his August 2025 termination, nor any facts suggesting that his reports—which were investigated and closed in January—played any role in the subsequent for-cause dismissal.

**The Title VII allegations** (Compl. ¶¶ 13–33):  Gada's alternative Title VII allegations are inconsistent with his PWL theory.  The PWL claim requires Gada to prove that his alleged January 2025 concerns about conflicts of interest were the but-for cause of his termination.  *See infra* Section I.  Yet for purposes of his Title VII claim, Gada alleges that an entirely different set of reports—made months later, in April and May 2025—actually caused his August termination.  In his Title VII claim, Gada alleges that in April 2025, he learned that Erik Toth, a Vice President

---

[2]   Edwards Lifesciences' SEC filings are publicly available and incorporated into Gada's Complaint.  Compl. ¶¶ 43, 52(h).  As such, the Court may take judicial notice of them.  *See, e.g., Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (courts may take judicial notice of properly authenticated documents filed with the SEC).

for cardiovascular and other services, had initiated an HR complaint about text messages exchanged between other PHCVI doctors. *Id.* ¶ 18. Gada had not previously seen nor received those text messages. *See id.* ¶ 19. According to Gada, the doctors' texts "included comments indicating that patients do not like to be treated by brown physicians with accents and wishing luck with the effort to replace white doctors with brown ones." *Id.* Later that April, Gada allegedly emailed a complaint about his coworkers' texts to Regional Vice President David Gibbons, who replied that Mr. Toth was coordinating a resolution of the matter. *Id.* ¶ 20. In May 2025, Gada met with HR employee Alison Beck twice to discuss his concerns. *Id.* ¶ 21. Gada alleges no facts suggesting that Defendants responded to his concerns with hostility or antagonism—those words appear nowhere in the complaint. To the contrary, Gada concedes that management was receptive and informed Gada they were "coordinating a resolution." *Id.* ¶ 20. Indeed, Gada recognizes that a PHCVI leader complained about the text messages before he knew they existed. *Id.* ¶¶ 18-19. Gada still asks the Court in his Title VII claim to infer that Defendants fired him in retaliation for alleged complaints first made 15 weeks—more than three months—before his dismissal, which happened immediately after an independent review confirmed Gada's deficient clinical performance and coworker mistreatment. *See id.* ¶¶ 23-28, 57.

## **LEGAL STANDARD**

Gada's pleading must allege "sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court must "disregard[] any formulaic recitation of the elements of a . . . claim or other legal conclusion, as well as allegations that are so threadbare

or speculative that they fail to cross the line between the conclusory and the factual." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327-28 (3d Cir. 2022) (quotation marks omitted).

**ARGUMENT**

**I.    Gada Fails to State a Claim Under the Pennsylvania Whistleblower Law (PWL)**

Gada's PWL claim is deficient as a matter of law on multiple independent grounds. The Court should dismiss the PWL claim because Gada fails to allege facts satisfying three discrete elements, each of which separately requires dismissal. Specifically, Gada alleges no facts demonstrating that (1) Defendants are an "employer" or "public body" under the statute, (2) Defendants engaged in "wrongdoing" or "waste" as defined by the statute, or (3) there is any causal connection between PWL-protected activity and his for-cause dismissal seven months later.

**A.    Gada Fails to Allege Facts Showing Defendants are an "Employer" or "Public Body" Under the PWL**

The PWL applies only to reports made against a "public body" or "employer," as defined by the statute. 43 Pa. Stat. § 1423(a). Neither Defendant is such an "employer" or "public body." The PWL defines "public body," in relevant part, as a body "which is funded in any amount by or through Commonwealth or political subdivision authority." *Id*. § 1422. It defines "employer" to include corporations "which receive[] money from a public body to perform work or provide services" to a public body. *Id*. Gada's lone, conclusory allegation in paragraph 62 of his Complaint—"Defendants are an 'employer' and 'public body' because they employed [Gada] and are funded 'in any amount' by or through the Commonwealth of Pennsylvania or political subdivision"—simply quotes the statute and is woefully deficient. This allegation is nothing but a recital of the PWL's statutory language and a threadbare legal conclusion—precisely the kind of pleading that *Iqbal* forbids. *See, e.g., Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

6

In *Wang v. Univ. of Pittsburgh*, 2021 WL 6051568 (W.D. Pa. Dec. 21, 2021), Judge Horan dismissed a similar PWL claim where the plaintiff merely alleged that UPMC "receives some amount of funding by or through the Commonwealth or a political subdivision authority thereof." *Id.* at *23.  As Judge Horan held, "[b]eyond this mere conclusory allegation, the Amended Complaint does not specifically identify what types of funding UPMC . . . receives from the Commonwealth.  The Amended Complaint contains no allegations that UPMC . . . satisf[ies] the public body requirements under the Pennsylvania Whistleblower Law." *Id.*  Other district courts within the Third Circuit agree that such conclusory allegations are insufficient.  *See, e.g., Chiancone v. Bayada Home Health Care, Inc.*, 2022 WL 1185892, at *6 (E.D. Pa. Apr. 21, 2022) ("Plaintiff's conclusory allegations that [defendant] 'receives government funding from the Commonwealth,' without more, is insufficient to establish that [defendant] is an 'employer' that receives funding from a public body.  Plaintiff must provide more than 'threadbare recitals of the elements' of a PWL claim to survive a motion to dismiss."); *Hyman v. FutureNet, Inc.*, 2020 WL 13663853, at *2 (E.D. Pa. Apr. 6, 2020) (collecting cases).  Gada's PWL claim must be dismissed on this basis alone.

### B.    Gada Fails to Allege Facts Showing Defendants Engaged in "Wrongdoing" or "Waste," as Defined by the PWL

Gada's PWL claim also fails—independently—because Gada lacks facts showing that he reported "wrongdoing" or "waste," as defined and required by the PWL.  The PWL protects employees who make "good faith report[s]" of narrowly defined categories of "wrongdoing" or "waste."  43 Pa. Stat. § 1423(a); *see id.* § 1422 (definitions).  As a threshold matter, Gada's claim is based entirely on public information, casting serious doubt on whether he possessed the requisite

"good faith" belief that any violation occurred.[3]  But, critically, conclusory statements that simply track the statute are insufficient:  "An employee who has been terminated based on a filed report . . . *must specify* how their employer is guilty of waste and/or wrongdoing."  *Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Commw. 1994) (emphasis added); *Sukenik v. Township of Elizabeth*, 131 A.3d 550, 555–56 (Pa. Commw. 2016).  Gada's threadbare "wrongdoing" and "waste" allegations fall far short of what is required.

### 1.    Gada Fails to Allege Facts Suggesting Defendants Committed "Wrongdoing"

Gada possesses no facts showing that either Defendant engaged in "wrongdoing."  The PWL requires Gada to plead facts showing "an actual 'violation' of the laws, regulations, ordinance, or code of conduct or ethics."  *Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015) (quoting 43 Pa. Stat. § 1422).  Gada's attempt to identify such a violation is plain error that underscores the weakness of this claim.  Gada states that Defendants violated "Section 255.7 of the Pennsylvania Code" but does not link "Section 255.7" to any particular title of the Pennsylvania Code.  *See* Compl. ¶ 63 (claiming "Section 255.7 of the Pennsylvania Code is designed to protect the interest of the public and the employer, and the violation of this code of conduct is not merely technical or minimal in nature.  The failure to obtain advance approval is 'wrongdoing.'").  The one and only Section 255.7 that appears within the entirety of the Pennsylvania Code is in Title 4, Part XI (related to the "Governor's Council on Drug and Alcohol Abuse") and concerns confidentiality protections for drug- and alcohol-abuse research data.  *See*

---

[3]  Because Gada's "whistleblower" claim is based exclusively on public information, it is unlikely that Gada possessed a "good faith" belief that the UPMC executive's publicly disclosed conduct violated any statute or regulation.  Moreover, the public nature of the information makes Count II inconsistent with the well-recognized purpose of the PWL.  *See, e.g., O'Rourke v. Commonwealth*, 778 A.2d 1194, 1202 (Pa. 2001) (the PWL "is not primarily designed to punish an employer for harboring retaliatory motives, but is, rather, chiefly a remedial measure intended to *enhance openness in government*" (emphasis added)).

8

4 Pa. Code § 255.7(a).  That has absolutely nothing to do with the alleged report Gada made. Indeed, no allegations plausibly connect any claimed "failure to obtain advance approval" under Section 255.7, *see* Compl. ¶ 63, with the alleged reports Gada made here.  Because there can be no violation of Section 255.7 under these facts, there can be no "wrongdoing."  *See, e.g., Sukenik*, 131 A.3d at 556 ("The test [for wrongdoing] is objective; it is irrelevant whether an employee believes the employer's conduct constitutes wrongdoing, *an actual violation is required*." (emphasis added)).

In sum, Gada's "wrongdoing" allegation rests on a citation to a regulation that does not exist in any applicable context, describes a violation that has no basis in the cited text, and relates to conduct—publicly disclosed board service and air travel—that is not wrongdoing by any objective measure.  Gada fails to state a PWL claim for purported "wrongdoing."

### 2.      Gada Fails to Allege Facts Suggesting Defendants Engaged in "Waste"

Gada's "waste" theory fares no better because Gada fails to allege facts showing that Defendants "wasted" funds that "belong[ed] to or derived from Commonwealth or political subdivision sources."  43 Pa. Stat. § 1422.  Instead, Gada alleges in conclusory fashion only that "the expenditure of state funds without advance approval is 'waste.'"  Compl. ¶ 64. This conclusory allegation (lacking any facts whatsoever regarding what "state funds" Defendants purportedly received or spent) is insufficient to state a "waste" claim.  *See, e.g., Gray*, 651 A.2d at 225 (mandating specificity in pleading "waste" allegations).  Gada also fails to allege facts showing that any *public* funds financed the underlying conduct that he contends was a conflict of interest.  *See, e.g., Bennett v. Republic Servs., Inc.*, 179 F. Supp. 3d 451, 455–56 (E.D. Pa. 2016) (dismissing PWL claim where complaint did not specify a waste of Commonwealth funds, as opposed to corporate funds); *Hyman*, 2020 WL 13663853, at *2.

9

Further, Gada's waste allegation is deficient for two additional reasons. First, he provides no citation for the purported "advance approval" requirement that is the apparent but wholly unexplained basis for his waste theory. *See* Compl. ¶ 64. Second, he does not allege facts showing that the purported misuse of Commonwealth funds was "substantial," as is also required by the PWL. 43 Pa. Stat. § 1422 (requiring "*substantial* abuse, misuse, destruction or loss of funds" (emphasis added)). *See Hyman*, 2020 WL 13663853, at *2–3 (dismissing PWL claim where plaintiff failed to allege that misuse of funds was "substantial"); *Bennett*, 179 F. Supp. 3d at 455. Gada's waste allegation must be dismissed for failure to state a claim.

### C.     In All Events, Gada Fails to Allege Facts Showing a Causal Link Between Purported PWL-Protected Activity and Gada's Dismissal

Finally, Gada fails to allege facts suggesting any causal connection between his claimed January 2025 reports about purported conflicts of interest and air travel and his dismissal seven months later. To survive a motion to dismiss, a PWL plaintiff must assert facts establishing a "causal connection" between his purported protected activity under the PWL and the challenged employment action. *Golaschevsky v. Com., Dep't of Env't Prot.*, 720 A.2d 757, 759 (Pa. 1998). Pennsylvania courts disfavor reliance on the PWL "in cases where there could be no rational relation between the alleged illegal activity and the employer's conduct." *Sea v. Seif*, 831 A.2d 1288, 1292 (Pa. Commw. Ct. 2003) (citation omitted). "Speculative and conclusory statements are not enough," *Bennett*, 179 F. Supp. 3d at 454, nor is the "mere fact that [the employee] was terminated at some time after his report[.]" *Lutz v. Springettsbury Twp.*, 667 A.2d 251, 254 (Pa. Commw. Ct. 1995). Instead, Gada must "show by concrete facts or surrounding circumstances that the report led to [his] dismissal[.]" *Gray*, 651 A.2d at 225; *see, e.g., McClain v. Munn*, 2008 WL 975059, at *3 (W.D. Pa. Apr. 9, 2008). Gada fails to allege any such facts.

In his Complaint, Gada offers nothing but bare legal conclusions to show causation. He claims he was fired "because [he] made a good faith report . . . of an instance of wrongdoing or waste by Defendant as defined by the PWL."  Compl. ¶ 66; *see id.* ¶¶ 54, 65.  But a "conclusory allegation that [Gada] was terminated 'in retaliation' for [his] report" is insufficient to state a PWL retaliation claim.  *Bennett*, 179 F. Supp. 3d at 456 (granting MTD where plaintiff did "not allege any facts . . . other than the conclusory allegation that she was terminated 'in retaliation' for her report").  Moreover, the Complaint is devoid of "concrete facts" sufficient to satisfy causation, such as a "specific direction or information [Gada] received not to file the report or there would be adverse consequences because the report was filed."  *Gray*, 651 A.2d at 225 (dismissing PWL claim).  To the contrary, Gada's own allegations confirm that UPMC legal personnel investigated and closed his complaint in January 2025, months before he was fired.  *See* Compl. ¶ 51.  Further, Gada's own allegations concede identified "clinical performance and conduct concerns," which arose immediately prior to Gada's late-August dismissal, *id.* ¶¶ 23–25—a dismissal which, notably, Gada does not allege breached his employment contract.

Lacking "concrete facts" to satisfy the PWL's causation requirement, Gada is left to argue that "surrounding circumstances" support an inference of retaliation.  *See, e.g., Gray*, 651 A.2d at 225.  But—as is true with Gada's Title VII claim, *see infra*—the sizable temporal gap between Gada's reports and his dismissal forecloses any such inference.  Gada made the at-issue reports in January 2025: *seven months before he was fired*.  Compl. ¶¶ 31, 41–51 (reports in Jan. 2025; dismissal in Aug. 2025).  Courts routinely dismiss PWL claims for lack of causation where the temporal gap is much smaller.  *See, e.g., Drumm v. Triangle Tech, Inc.*, 2016 WL 1384886, at *9 (M.D. Pa. Apr. 7, 2016) (six or seven weeks); *Bennett*, 179 F. Supp. 3d at 456 (two months); *Grim v. May Grant Assocs.*, 2019 WL 358520, at *6 (E.D. Pa. Jan. 29, 2019) (four months); *Lutz*, 667

A.2d at 254 (five months); *McAndrew v. Bucks Cnty. Bd. of Comm'rs*, 982 F. Supp. 2d 491, 505 (E.D. Pa. 2013) (collecting cases with far shorter timespans). Here, Gada fails to plead any additional facts warranting a causal inference. *See, e.g., Lutz*, 667 A.2d at 254 (affirming PWL dismissal where "[n]ot only did the events occur months apart, but there is not even an innuendo of any nexus between the two or an allegation of maliciousness on Employer's part").

\* \* \* \* \*

Gada's PWL claim fails at every level. Gada lacks facts suggesting that Defendants are an "employer" or "public body" under the statute; that they engaged in "wrongdoing" or "waste" under the statute; or that a causal link exists between Gada's purported protected activity and his August dismissal. The information Gada claims to have reported was publicly available, he relies on a phantom regulatory violation, and the seven-month gap between his reports and his dismissal forecloses any inference of retaliation. The PWL claim must be dismissed.

## II.     Gada Fails to Allege Facts Demonstrating a Causal Link Between Activity Protected by Title VII and his Dismissal for Cause

Gada's alternative theory of retaliation asserted under Title VII fails because his own allegations foreclose any inference of causation. To state a retaliation claim under Title VII, Gada must allege sufficient facts demonstrating that "(1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Smith v. City of Atl. City*, 138 F.4th 759, 775 (3d Cir. 2025) (brackets omitted). Under that controlling law, Gada fails to plead facts sufficient—or even close to sufficient—to show any causal connection and his claim must be dismissed.

To satisfy Title VII's causation prong, Gada ultimately "must establish that his . . . protected activity was a but-for cause of the alleged adverse action by the employer." *Blakney v.*

12

*City of Philadelphia*, 559 F. App'x 183, 185 (3d Cir. 2014) (citation omitted).  "Two main factors are relevant with respect to the existence of a causal link between the employee's protected activity and the employer's adverse action: (1) timing and/or (2) evidence of ongoing antagonism." *Janowski v. Sage Client 441, LLC*, 2013 WL 264904, at *4 (W.D. Pa. Jan. 4, 2013) (Conti, J.) (granting motion to dismiss Title VII claim for failure to allege causation); *see, e.g., Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) ("To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.").  As discussed below, Gada fails to allege either.

*First*, Gada fails to allege facts suggesting that the timing of his firing was "unusually suggestive" of a retaliatory motive.  *Blakney*, 559 F. App'x at 186 (affirming dismissal of Title VII claim for failure to allege causation and holding "temporal proximity greater than ten days requires supplementary evidence of retaliatory motive").  The latest that Gada's purported "protected activity" occurred was in April and May 2025, Compl. ¶¶ 20–21, leaving at least a *10-week gap—2.5 months*—between that activity and his August 13, 2025 dismissal for cause.  Indeed, his first reports allegedly occurred *16 weeks—3.5 months*—earlier.  When assessing the temporal gap between protected activity and an adverse employment action, "[d]ays are suggestive; months are not." *Rosati v. Colello*, 94 F. Supp. 3d 704, 717 (E.D. Pa. 2015) (dismissing Title VII claim for lack of causation).  The Third Circuit and district courts consistently have found far smaller temporal gaps to be insufficient to suggest a causal connection.  *See, e.g., Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three weeks not "unusually suggestive"); *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two months not "unusually suggestive"); *Peterkin v. Prospect Airport Servs., Inc.*, 2021 WL

13

2400753, at *21 (E.D. Pa. June 11, 2021) (dismissing Title VII claim where the "two to three-month time period is not usually suggestive and [plaintiff] fails to allege additional facts to suggest a causal connection"); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (explaining that "a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation").[4]

*Second*—and because he possesses no facts demonstrating temporal proximity—Gada must bridge the temporal gap with facts showing that he was subjected to "ongoing antagonism" between his April/May reports and his August 13 dismissal. *See, e.g., Janowski*, 2013 WL 264904, at *4; *Blakney*, 559 F. App'x at 186 (explaining that "a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive"). Gada pleads no such facts. He does not allege *any* antagonism, much less the "pattern of antagonism" that courts have deemed sufficient to overcome such a months-long temporal gap. *See, e.g., Blakney*, 559 F. App'x at 186 (providing example of a "constant barrage of written and verbal warnings and . . . disciplinary actions, all of which occurred soon after plaintiff's initial complaints" (citation omitted)). Nowhere does Gada allege that the clinical-performance and conduct investigations ultimately leading to his termination were initiated because of his complaints or conducted by anyone with retaliatory motive based on those complaints. Rather, the facts pleaded by Gada tell the opposite story: An

---

[4] These rulings are consistent with other federal circuit courts' treatment of similar (or smaller) temporal gaps in Title VII retaliation claims. *See, e.g., Meinen v. Bi-State Dev. Agency*, 101 F.4th 947, 951 (8th Cir. 2024) (affirming 12(b)(6) dismissal where plaintiff alleged only "one to two months" between protected activity and termination); *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (affirming 12(b)(6) dismissal where "a two-month temporal gap" existed between the alleged protected activity and the purported retaliation); *Gilliam v. U.S. Dep't of Veterans Affs.*, 822 F. App'x 985, 990 (11th Cir. 2020) (affirming 12(b)(6) dismissal where "the lapse of three months between [defendant's] alleged discovery of [plaintiff's] statutorily protected expression and the adverse employment action is too long to permit an inference of causation based on temporal proximity alone").

administrator filed the HR complaint over text messages, which Gada learned about after the fact. Compl. ¶ 19.  When Gada subsequently reached out about the administrator's complaint, leaders were receptive and responsive to his claimed concerns, meeting with him twice and confirming they were coordinating a resolution—the opposite of antagonism.  *Id.* ¶ 20 (management confirmed that they were "coordinating a resolution" of complained-of conduct); *id.* ¶ 21 (HR met with Gada twice to discuss his concerns).

In sum, Gada fails to allege facts connecting any Title VII "protected activity" to his dismissal.  The at least 10-week gap between his reports and his dismissal is far too great to independently suggest any causal connection.  And Gada pleads no facts showing any antagonism, much less a "pattern of antagonism" sufficient to bridge that gap.  His own Complaint confirms the opposite:  a PHCVI leader complained about the text messages before Gada learned of them, and leadership responded to his concerns.  For these reasons, Count I should be dismissed with prejudice.

## CONCLUSION

Gada was dismissed from employment for cause due to clinical performance deficiencies and mistreatment of coworkers.  His two retaliation claims rest on mutually exclusive theories, each unsupported by any alleged facts showing a causal connection to his termination.  His PWL allegations do not tie Defendants to the statute, cite an inapplicable regulation, and rest on publicly available information and alleged reports separated from his termination by seven months.  His Title VII claim founders on a more than 10-week, multi-month temporal gap and the complete absence of any alleged antagonism.  For all of the reasons stated above, Gada fails to state a claim upon which relief can be granted, and this Court should dismiss both counts with prejudice.

DATED: May 22, 2026

Respectfully submitted,

*/s/ Rebekah B. Kcehowski*

Rebekah B. Kcehowski (P.A. I.D. No. 90219)
James S. Urban (P.A. I.D. No. 82019)
Joseph W. Ferari (P.A. I.D. No. 334341)
JONES DAY
500 Grant St., Suite 4500
Pittsburgh, PA 15219
Telephone: (412) 391-3939
Facsimile: (412) 394-7959
rbkcehowski@jonesday.com
jsurban@jonesday.com
jferari@jonesday.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2026, a copy of Defendants' Memorandum of Law in Support of their Motion to Dismiss was served on counsel of record via the U.S. District Court for the Western District of Pennsylvania's CM/ECF system.

 /s/ *Rebekah B. Kcehowski*
Rebekah B. Kcehowski
*Counsel for Defendants*